529 F.2d 1294
 Gayle McQuoid HOLLEY, Individually and on behalf of James
McQuoid, et al., Plaintiff-Appellant,
v.
Abe LAVINE, as Commissioner of the New York State Department
of Social Services, and James Reed, as
Commissioner of the Monroe County
Department of Social Services,
Defendants-Appellees.
 No. 424, Docket 75--7468.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 9, 1976.
Decided Feb. 3, 1976.
 
 K. Wade Eaton, Greater Up-State Law Project, Rochester, N.Y., for plaintiff-appellant.
 Alan W. Rubenstein, Principal Atty. (Louis J. Lefkowitz, Atty. Gen. of N.Y., Jean M. Coon, Asst. Sol. Gen., Albany, N.Y., Charles G. Finch, Chief Counsel, Charles G. Porreca, Monroe County Dept. of Social Services, Rochester, N.Y., on the briefs), for defendants-appellees.
 Before ANDERSON, FEINBERG and MULLIGAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Gayle McQuoid Holley, individually and on behalf of her six children, appeals from a judgment of the United States District Court for the Western District of New York, Harold P. Burke, J., dismissing her complaint against defendants Abe Lavine, Commissioner of the New York State Department of Social Services, and James Reed, Commissioner of the Monroe County Department of Social Services. Appellant is a Canadian citizen and an 'illegal alien' but her six children are all American citizens, having been born here. Her complaint seeks an order requiring defendants to restore welfare benefits under the Aid to Families with Dependent Children (AFDC) program and invalidating section 131--k of the New York Social Services Law, insofar as it deprives certain illegal aliens of AFDC benefits.[1] Judge Burke dismissed the complaint for lack of jurisdiction and failure to state a claim on which relief could be granted.
 
 
 2
 Appellant argues that the district court had subject matter jurisdiction under both 28 U.S.C. § 1331 and 28 U.S.C. § 1343(3), the jurisdictional counterpart of the Civil Rights Act of 1871, 42 U.S.C. § 1983. As to the former, the district court held that the amount in controversy did not exceed $10,000, a conclusion with which we agree. Rosado v. Wyman,414 F.2d 170, 176, 181 (2d Cir. 1969), rev'd on other grounds, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).[2] Judge Burke also held, however, that 'Neither the state commissioner nor the county commissioner,' sued in their official capacities, 'are within the scope of Section 1983' and that, in any event, 'The complaint asserts no substantial claim of unconstitutionality.' The former holding is incorrect under McMillan v. Board of Education, 430 F.2d 1145, 1148--49 (2d Cir. 1970), and Erdmann v. Stevens, 458 F.2d 1205, 1208 (2d Cir.), cert. denied, 409 U.S. 889, 93 S.Ct. 126, 34 L.Ed.2d 147 (1972).
 
 
 3
 Whether plaintiff has alleged a constitutional claim under section 1983 that is substantial enough to confer jurisdiction is a closer question. Although here illegally, plaintiff for many years has been allowed by the Immigration and Naturalization Service to remain for humanitarian reasons, to prevent the separation of mother and children. Her constitutional claim is that denial of welfare benefits unfairly discriminates against at least those presumably few illegal aliens in plaintiff's unusual situation, thus denying the equal protection of the laws to her in her own right and also to her children, who, though citizens, are similarly penalized by a one-seventh reduction of welfare going to the household. Under the minimal standards laid down by Hagans v. Lavine, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), and Goosby v. Osser, 409 U.S. 512, 518, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973), we cannot say that the claims are wholly insubstantial or obviously frivolous or that decisions of the Supreme Court foreclose the subject. The Supreme Court has apparently never dealt with the equal protection rights of illegal aliens in this context. Cf. Graham v. Richardson, 403 U.S. 365, 371, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971); see also Bolanos v. Kiley, 509 F.2d 1023, 1025 (2d Cir. 1975). Nor is the claim that children whose parents are illegal aliens have their own rights to benefits an insubstantial one. Cf. Weber v. Aetna Casualty & Surety Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972). We do not characterize plaintiff's constitutional arguments as persuasive; we hold merely that the district judge could not dismiss them out of hand.
 
 
 4
 We therefore reverse the judgment of the district court and remand for further proceedings. Plaintiff's constitutional claims can only be considered by a three-judge court. 28 U.S.C. § 2281. However, plaintiff also alleges that section 131--k, see note 1 supra, conflicts both with the Social Security Act, 42 U.S.C. §§ 601, 602(a)(10), and 606(b)(1), and with an HEW regulation, 45 C.F.R. § 233.50. The statutes cited are alleged to require aid to be given to the parents or relations of needy dependent children with whom they are living.[3] The regulation provides that public assistance shall be given to persons otherwise eligible who are either citizens or aliens 'lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law,' including parolees and certain refugees. According to plaintiff, since the immigration authorities have allowed her to stay, she resides here 'under color of law'. We do not pass upon the merits of these claims of conflict between New York State and federal law or appellees' response thereto. We note only that since pendent jurisdiction exists over them, the district judge, sitting alone, may well want to consider and rule upon these claims before convening the three-judge court. Hagans v. Lavine, supra, 415 U.S. at 543--45, 94 S.Ct. 1372. In interpreting the statute and the regulation, it might be advisable for the district court to seek the views of the Department of Health, Education and Welfare. Finally, it was indicated at oral argument that plaintiff may again have applied for status as a lawful resident. If such status is granted, the district judge should consider whether the controversy is rendered moot. See Gonzalez v. Automatic Employees Credit Union, 419 U.S. 90, 99--101, 95 S.Ct. 289, 42 L.Ed.2d 249 (1974).
 
 
 5
 Reversed and remanded.
 
 
 
 [1]
 New York Social Services Law § 131--k provides:
 § 131--k. Illegal aliens
 
 
 [1]
 Any inconsistent provisions of this chapter or other law notwithstanding, an alien who is unlawfully residing in the United States or who fails to furnish evidence that he is lawfully residing in the United States shall not be eligible for aid to dependent children, home relief or medical assistance, except for a temporary period of thirty days in accordance with subdivision two of this section
 
 
 [2]
 An otherwise eligible applicant or recipient who has been determined to be ineligible for aid to dependent children, home relief or medical assistance because he is an alien unlawfully residing in the United States or because he failed to furnish evidence that he is lawfully residing in the United States shall, nevertheless, be eligible to receive home relief and medical assistance for a temporary period not to exceed thirty days from the date of such determination in order to allow time for the referral of the cases to the United States immigration and naturalization service, or nearest the consulate of the country of the applicant or the recipient, and for such service or consulate to take appropriate action or furnish assistance
 
 
 [2]
 In Rosado, as here, plaintiffs unsuccessfully argued that the amount of monthly benefits in controversy should be multiplied by the number of months they would presumably remain on welfare. See Rosado v. Wyman, 304 F.Supp. 1356, 1363 (S.D.N.Y.1969)
 
 
 [3]
 42 U.S.C. § 601 authorizes appropriations:
 For the purpose of encouraging the care of dependent children . . . by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents or relatives with whom they are living to help maintain and strengthen family life and to help such parents or relatives to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection . . ..
 42 U.S.C. § 602 provides:
 (a) A State plan for aid and services to needy families with children must . . . (10) provide . . . that aid to families with dependent children shall be furnished with reasonable promptness to all eligible individuals . . ..
 42 U.S.C. § 606(b)(1) defines 'aid to families with dependent children' to include payments and services 'to meet the needs of the relative with whom any dependent child is living.'